1

2

3

4

5

6

7

8              **UNITED STATES DISTRICT COURT**

9            **SOUTHERN DISTRICT OF CALIFORNIA**

10

11   BRIAN BETHEL,                              CASE NO. 07cv0863 DMS (AJB)

12                            Plaintiff,        **ORDER GRANTING IN PART
                                                AND DENYING IN PART**
          vs.                                   **DEFENDANTS' MOTION FOR**
13                                              **PARTIAL SUMMARY**
                                                **JUDGMENT**
14   HOME DEPOT U.S.A., INC., LOUISVILLE
     LADDER, INC., and DOES I through L,        [Docket Nos. 49, 50]
15   inclusive,

16                            Defendants.

17

18         This matter comes before the Court on Defendants Home Depot U.S.A. Inc.'s ("Home

19   Depot's") and Louisville Ladder, Inc.'s ("Louisville Ladder's") motion for partial summary judgment

20   as to the Plaintiff Brian Bethel's prayer for punitive damages.  The matter was fully briefed and argued

21   before the Court on October 31, 2008, with Thomas F Friedberg and Howard J Franco Jr, appearing

22   on behalf of Plaintiff and Defendants, respectively.  For the reasons discussed below, the motion is

23   granted as to Home Depot and denied as to Louisville Ladder.

24                                          **I.**

25                              **FACTUAL BACKGROUND**

26         This case arises out of injuries allegedly suffered by Plaintiff after operating an aluminum

27   extension ladder manufactured by Louisville Ladder.  On or about December 1, 2006, Plaintiff rented

28   a ladder from Home Depot.  (Compl. ¶¶ 8-9.)  Plaintiff spoke with Home Depot employees who

recommended a twenty-four foot extension ladder. (Compl. ¶ 10.) After renting and transporting the ladder to his home, Plaintiff placed the ladder against the side of his home to access the roof. (Compl. ¶ 11.) After Plaintiff climbed the ladder, it collapsed approximately four inches. (Compl. ¶ 11.) The collapsing motion caused Plaintiff to fall and suffer damages in excess of seventy-five thousand dollars. (Compl. ¶¶ 11, 14.) Plaintiff alleges four claims for relief: (1) negligence against Home Depot, (Compl. ¶¶ 7-17); (2) strict liability against Home Depot, (Compl. ¶¶ 18-28); (3) negligence against Louisville Ladder, (Compl. ¶¶ 29-36); and (4) strict liability against Louisville Ladder, (Compl. ¶¶ 37-47). In addition to compensatory damages, Plaintiff seeks punitive damages pursuant to California Civil Code § 3294.

Plaintiff alleges that the ladder in question (model FE3224) is defective because it incorporates a design defect in a safety feature and the warning labels attached to the ladder do not sufficiently inform users of the hazards associated with the safety feature. The FE3224 model extension ladder is comprised of two sections, the base and the fly, each measuring 12 feet. When the fly section is extended, rung locks (a.k.a. fly locks) attached to the fly section secure it to the base section. To operate the rung locks, the fly section is raised by using an attached rope and pulley system. As the fly section is raised, the rung locks disengage from the base section rungs and re-engage on the next base section rung. Once the user reaches a desired height, the fly section is lowered carefully, allowing the rung locks to engage on a base section rung. The fly section is retracted by first raising the fly section, thereby allowing the rung locks to become disengaged, and then lowering the section. (*See* Mot., Ex. H, Quan Decl ¶ 9.)

The ladder in question has a patented safety feature, called a Quicklatch, which is a durable, plastic latch that is mounted on a rivet to the rear of the right rung lock. A person using the ladder engages the Quicklatch by manually rotating it forward over the rung lock and between the base and fly section, until it latches the rung lock onto the desired rung of the base section. When engaged, the Quicklatch is intended to prevent the fly section from retracting or moving. (*See* Quan Decl. ¶10; Poczynok Decl., Ex. B at 16.) Plaintiff alleges that the Quicklatch on the subject ladder is defectively designed because when the latch is partially deployed, or "intermediately positioned," it creates a "false latching" condition. (Complaint ¶¶ 20, 40.) Plaintiff further alleges that Defendants knew of

the false latching hazard, and acted in conscious disregard of the safety of consumers by marketing the product and failing to warn consumers.  (Complaint ¶¶ 27-28, 46-47.)

## II.

## LEGAL STANDARD

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure where there is an absence of a genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Cattrett,* 477 U.S. 317, 322 (1986).  A fact is material when, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party seeking summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.  The moving party can satisfy this burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial.  *Id.* at 322-23.  If the moving party fails to meet this initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence.  *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159-60 (1970).  If the moving party meets this initial burden, the nonmoving party cannot defeat summary judgment by merely demonstrating "that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986). Rather, the nonmoving party must "go beyond the pleadings and by [his or] her own affidavits, or by 'the depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).  The court must view all inferences drawn from the underlying facts in the light most favorable to the party opposing the motion.  *See Matsushita,* 475 U.S. at 587.  "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he is ruling on a motion for summary judgment."  *Anderson*, 477 U.S. at 255.

/ / /

07cv0863

1    "If summary judgment is not rendered on the whole action, the court should, to the extent

2    practicable, determine what material facts are not genuinely at issue." Fed. R. Civ. P. 56(d). Under

3    Rule 56 (d), the court may grant summary judgment on less than the non-moving party's whole claim.

4    *Zapata Hermanos Sucesores, S.A. v. Hearthside Baking Co., Inc.*, 313 F.3d 385, 391 (7th Cir. 2002).

5                                            **III.**

6                                       **DISCUSSION**

7         Under California law, punitive damages are available "[i]n an action for the breach of an

8    obligation not arising from contract, where it is proven by clear and convincing evidence that the

9    defendant has been guilty of oppression, fraud, or malice." Cal. Civ. Code § 3294(a). In products

10   liability cases, malice is most often at issue. *See e.g., Hoch v. Allied-Signal, Inc.*, 24 Cal. App.4th 48,

11   61 (Cal.App.1.Dist.1994). "Malice" is defined as either (1) "conduct which is intended by the

12   defendant to cause injury to the plaintiff"; or (2) "despicable conduct which is carried on by the

13   defendant with a willful and conscious disregard of the rights or safety of others." *Id.* at § 3294(c)(1).

14   "Punitive damages may be awarded in a product liability action if it is shown that the defendant placed

15   a product on the market in conscious disregard of the safety of consumers and others."[1] *Ehrhardt v.

16   Brunswick, Inc.*, 186 Cal. App.3d 734, 741 (Cal. App. 4 Dist. 1986). To establish conscious disregard,

17   a plaintiff must show "that the defendant was aware of the probable dangerous consequences of his

18   conduct, and that he wilfully and deliberately failed to avoid those consequences." *Hoch*, 24

19   Cal.App.4th at 61. An employer cannot be held liable for punitive damages based on an employee's

20   acts unless the employer "authorized or ratified the wrongful conduct for which the damages are

21   awarded or was personally guilty of oppression, fraud, or malice." Cal. Civ. Code § 3294(b). In the

22   case of a corporate employer, liability only attaches where "an officer, director, or managing agent"

23   authorized or ratified the act at issue, or acted with malice in his own right. *Id.*

24   **A.       Louisville Ladder**

25        Plaintiff alleges Louisville Ladder acted in conscious disregard of his safety because it knew

26   of the false latching hazard and failed to properly warn consumers of that hazard. (Complaint ¶¶ 46-

27   _____

28        [1]  Because it is undisputed that Defendants placed the ladder in the stream of commerce, the issue before the Court is whether Plaintiff has produced evidence sufficient to raise a triable question of fact concerning Defendants' knowledge and intent.

47.)  Louisville Ladder contends Plaintiff lacks clear and convincing evidence to carry his burden of persuasion at trial.  (Mot. at 8-9.)  In response, Plaintiff directs the Court's attention to three pieces of evidence.

First, Plaintiff's expert witness, Peter J. Poczynok, identified the false latching condition while conducting tests on the ladder.  (Poczynok Decl. at ¶10.)  The false latching condition, according to Mr. Poczynok,  is repeatable and would have been identified by Louisville Ladder had it conducted a thorough hazard analysis of the Quicklatch mechanism.  (Poczynok Decl. at ¶11.)  Mr. Poczynok opines that Louisville Ladder's testing of the ladder was deficient or "impoverished."  He states that although Louisville Ladder claims it followed the testing protocol in the American National Standards Institute (ANSI) A14.5, that standard does not address a safety feature like the Quicklatch.  (Poczynok Decl., Ex. C. at 38.)  Based on his review of Louisville Ladder's expert's reports, Mr. Poczynok concluded that, while Louisville Ladder identified and possibly fixed two hazards associated with the Quicklatch in a closed position, it "failed to identify the hazard associated with the false latching of a partially deployed Quicklatch."  (Poczynok Decl. at ¶¶11-12.)  He further points out that a properly conducted hazard analysis would have involved testing the latch under "reasonably foreseeable uses and misuses" of the product, such as testing an "intermediately positioned latch."  (Poczynok Decl., Ex. C. at 38.).  Had Louisville Ladder done so, it would have identified the false latching hazard.  (*Id.*)

Second, Plaintiff directs the Court's attention to a document disclosed from Louisville Ladder's files concerning its hazard analysis.  The document identifies the potential hazard of a "fly section free-fall," which could result in "bodily injury or death."  (Friedberg Decl. Ex. C.)  Plaintiff argues this is evidence of Louisville Ladder's knowledge of the potentially hazardous conditions associated with the Quicklatch.  (Opp. at 3.)

Finally, Plaintiff's expert witness, Carl A. Beels, reviewed Louisville Ladder's product development files, including those relating to the instruction labels for the Quicklatch.  Based on these sources, Mr. Beels concluded that Louisville Ladder "knew" of the false latch hazard.[2]  (*Id.* at ¶7.)  He

---

[2]   Mr. Beels also opines that Louisville Ladder's failure to warn consumers under the circumstances demonstrates a "conscious disregard for public safety."  (Beels Decl. ¶7.)  Defendants correctly object to the opinion as an improper legal conclusion on an ultimate issue, namely Defendants' intent. *Nationwide Transp. Fin. v. Cass Info. Sys.*, 523 F.3d 1051, 1058 (9th Cir. 2008).

1     also opines that Louisville Ladder failed to warn consumers of the potential hazard of a false latch

2     condition. (Beels Decl. ¶5.)

3          Viewed most favorably to Plaintiff, the evidence shows that while Louisville Ladder did

4     identify and correct two hazards in its safety testing with the latch in a fully closed position, it did not

5     test the latch in an intermediate or partially deployed position which would have revealed the false

6     latching hazard. Plaintiff introduced evidence that such testing is repeatable and that use of the latch

7     in an intermediate position is foreseeable. In addition, internal hazard testing documents show that

8     Louisville Ladder was on notice that hazards associated with a "fly section free-fall" could result in

9     death or serious injury. This evidence is sufficient to create a triable question of fact concerning

10     Louisville Ladder's knowledge of the false latching hazard.

11          Louisville Ladder disputes that any corporate officer, director, or managing agent had

12     knowledge of the alleged defect. (Reply at 5.) It argues that even if its former employee, Michael Van

13     Bree, knew of the defect as a result of the hazard testing regime, he was not a "officer, director or

14     managing agent" at the time the ladder was marketed. (*Id.*) On the record before the Court, however,

15     it is unclear whether Mr. Van Bree was an officer, director, or managing agent of the company. In

16     addition, Plaintiff has produced evidence that shows Mr. Van Bree's role went beyond hazard testing,

17     and included seeking feedback on the Quicklatch safety feature from purchasers and coordinating the

18     product launch with Louisville Ladder's sales force. (Friedberg Decl., Ex. A, B.) These documents,

19     viewed most favorably to Plaintiff, reveal coordination among Louisville Ladder employees across

20     different departments in the product development and initial marketing stages. Because none of this

21     activity would likely be possible without the coordination and knowledge of corporate management,

22     an inference may drawn that Louisville Ladder knew of, and authorized or ratified, the release of a

23     defective product into the stream of commerce. Accordingly, Plaintiff has produced sufficient

24     admissible evidence to raise a triable question of fact on this issue. Whether Louisville Ladder's

25     conduct warrants an award of punitive damages is a question of fact for the jury to decide.

26     / / /

27     / / /

28

The opinion regarding Defendant's knowledge is also speculative and disregarded.

         07cv0863

**B.       Home Depot**

Plaintiff argues that punitive damages are appropriate because Home Depot acted in conscious disregard of Plaintiff's safety. (Complaint ¶¶ 27-28.) Plaintiff claims that Home Depot, as owner, distributor, and lessor of the ladder, "was in the best position to know of its propensity for false locking, and the inherent danger that the defect posed to its customers." (Opp. at 7.) Home Depot's employees, according to Plaintiff, failed to discuss the rung lock or Quicklatch with him, despite corporate policy requiring them to do so. (*Id.*) Plaintiff argues these circumstances create an issue of fact for the jury to decide, citing *Snyder v. Enterprise-Rent-A-Car Co.*, 392 F. Supp.2d 1116 (N.D. Cal. 2005.)

In *Snyder*, the plaintiffs sought punitive damages against defendants for recklessly renting vehicles to unlicensed drivers. The court in *Snyder* declined to summarily adjudicate the punitive damages claim because plaintiffs came forward with sufficient evidence of malice (that defendants conducted cost-benefit studies and concluded that the costs of verifying drivers' licenses outweighed the potential liability of foregoing such verification). *Id.* at 1129-30. The court concluded that plaintiffs' evidence demonstrated defendants' knowledge of the danger posed by renting cars to unlicensed drivers, and, despite that knowledge, defendants willfully and deliberately engaged in the conduct. *Id.*

The circumstances here are distinguishable. Plaintiff has not produced any evidence of knowledge or corporate policy-making on the part of Home Depot concerning the alleged design defect. Instead, Plaintiff seeks to establish Home Depot's "conscious disregard" through the testimony of two Home Depot employees: Paul Jimenez and Miranda Galan. Mr. Jimenez was at all relevant times the Home Depot tool rental operations manager. He testified concerning policies and procedures that Home Depot Safety Associates must follow when leasing equipment to consumers. Specifically, that Safety Associates are instructed to gauge customer's needs, illustrate how particular pieces of equipment work, and discuss safety features of the equipment. (Friedberg Decl., Ex. E, at 35:11-37:6, 39:4-40:12.) Mr. Jimenez also testified that the Quicklatch must be engaged to properly store, transport, and use the ladder, and Home Depot policy requires that the Quicklatch be engaged while ladders are stored on and transported off premises. (*Id.* at 41:14-42:23.) In addition, Safety Associates

07cv0863

1    must check equipment for "cracks and defects." (*Id.* at 42:24-43:13.) Ms. Galan, a Home Depot

2    employee, leased the ladder to Plaintiff. She testified that she did not discuss the Quicklatch safety

3    feature with Plaintiff. (Friedberg Decl., Ex. E, at 52:2-5.) Nor did any other Home Depot employee,

4    to the best of Ms. Galan's knowledge. (*Id.* at at 53:10-12.)

5         Thus, unlike the evidence of corporate policy-making in *Snyder,* the evidence offered against

6    Home Depot here is insufficient to create a triable question of material fact. At most, it shows that Ms.

7    Galan did not comply with Home Depot's policy of discussing with customers how the ladder works

8    and its safety features. But such evidence does not demonstrate that Home Depot knew of the alleged

9    defects in the Quicklatch, or, as evidenced by corporate decison-making, willfully and deliberately lent

10   the ladder to Plaintiff despite that knowledge. Accordingly, summary adjudication in favor of Home

11   Depot on Plaintiff's punitive damages claim is warranted.

12                                              **IV.**

13                                         **CONCLUSION**

14        For the reasons set out above, the Court grants in part and denies in part Defendant's motion

15   for partial summary judgment on the issue of punitive damages. Specifically, the Court GRANTS the

16   motion as to Home Depot, and DENIES the motion as to Louisville Ladder.

17   **IT IS SO ORDERED**.

18   DATED: December 4, 2008

19   _____

20                              HON. DANA M. SABRAW
                                United States District Judge

21

22

23

24

25

26

27

28